343 So.2d 1335 (1977)
Don BRUNO and Steven Robert Eller, Appellants,
v.
STATE of Florida, Appellee.
No. BB-388.
District Court of Appeal of Florida, First District.
March 30, 1977.
Richard W. Ervin, III, Public Defender, and Michael M. Corin, Asst. Public Defender, for appellants.
Robert L. Shevin, Atty. Gen., and Donald K. Rudser, Asst. Atty. Gen., for appellee.
RAWLS, Acting Chief Judge.
The opinion of the Florida Supreme Court in Croteau v. State, 334 So.2d 577 (Fla. 1976), mandates a reversal of this cause. Neither the trial judge nor the state had the benefit of the Croteau opinion at the hearing on the motion to suppress the evidence relied upon to sustain the judgments of conviction appeal, which resulted in an order denying same entered on January 23, 1976. It is in the posture of a "Monday morning quarterback" that we now review the judgments of conviction entered on April 5, 1976.
On October 27, 1975,[1] Bruno's probation officer, in the course of his supervision, conducted a routine home contact with his probationer. In carrying out this mission, the probation officer visited the house in which Bruno was residing. According to the officer's testimony, entrance to the house was gained pursuant to the following circumstances:
"I can't recall if I actually knocked on the door. When I approached the residence, *1336 I saw my probationer, Don Bruno, standing there. And we had visual eye contact. I was about to knock."
On cross examination, in answer to the question of whether the probation officer was allowed entry by Bruno, the following colloquy transpired:
"A [probation officer] I felt it was a mutual  we had made eye contact. He knew my purpose of coming to the residence was to see him, obviously, and I felt very comfortable upon entering the residence.
Q [defense counsel] Did he open the door for you?
A No.
Q How did you gain entry to the house?
A I opened the screen door.
Q You opened the screen door. Did you ask permission to come inside the house?
A I can't recall. I visit a number of houses."
After gaining entrance in the foregoing fashion, the officer detected the odor of marijuana and observed marijuana "roaches" in an ash tray in the living room. As the officer made his way to Bruno's bedroom, Bruno was exiting the bedroom with a styrofoam container in his hand. The officer took the styrofoam container and, upon opening it, he observed, what he believed to be, eight bags of marijuana inside. After the police arrived, the probation officer went back into the house to make a more thorough search. He found amphetamines in a metal container in a box on a table in Bruno's bedroom. Also, a police officer and the probation officer saw on Eller's dresser in his bedroom narcotic paraphernalia (pipe).
Pursuant to pleas of nolo contendere, reserving their right to appeal the denial of their motion to suppress, Bruno was adjudicated guilty of possession of amphetamines and possession of more than five grams of marijuana, and Eller was adjudicated guilty of possession of more than five grams of marijuana.
The Florida Supreme Court held in Croteau v. State, supra:
"... that one facing trial for a new and discrete criminal offense ... [as Bruno and Eller were in the instant case] be given the full protection of the Fourth Amendment and the corollary means by which the search and seizure principle is vindicated... . In short, we conclude that a probation officer has authority to enter upon the living quarters of his probationer to observe his life-style and any material evidence thereby discovered is admissible in proceedings for revocation of probation, but this does not validate an otherwise unreasonable search for contraband resulting in prosecution for a separate criminal offense."
Clearly, entrance was gained in the instant cause by means of the authority of the probation officer and for the purpose of conducting a routine contact with his probationer. The contraband discovered through a warrantless search, such as was conducted in the instant case, cannot be utilized in the prosecution of a new and discrete offense.
The trial court erred in not granting appellants' motion to suppress, therefore, the judgments of conviction are reversed. Such reversal is without prejudice to the state in utilizing the fruits of the search in proceedings for revocation of probation.
MILLS and SMITH, JJ., concur.
NOTES
[1] An occupant of the house testified that she was Steve's (Eller) fiancee and at approximately 5:30 p.m. on this date "Steve and I had just got to his [Steve's] house."