OPINION OF THE COURT
Wachtler, J.
The question on this appeal is whether a probation officer, who has received anonymous information that a defendant on probation has a gun and is dealing in drugs, may summarily search the defendant, his automobile and other possessions. The courts below held the search was valid and the defendant has appealed.
In 1973 the defendant, charged with possessing dangerous drugs and a weapon, pleaded guilty to the weapon charge. On May 5, 1974 he was sentenced to five years probation. A year and one half later Sergeant McBurney of the Webster Police Department received information from an unknown individual that an employee at the Webster branch of the Xerox Corporation possessed a weapon and was also "dealing drugs at the corporation.” The anonymous informant identified the employee as Josh Jackson and said that he drove a Cadillac bearing license plate number 829MDS. This information was received by Sergeant McBurney between 3:30 and 4:00 o’clock on the afternoon of November 25, 1975.
The following morning, November 26, Sergeant McBurney verified that the car was registered to the defendant. He also made a record check on the defendant and found that he was on probation. At approximately 10:30 a.m. he called the defendant’s probation officer, Edward Petrovick, and told him of the information he had received. During the conversation McBurney indicated that he did not know who the informant was. Petrovick then consulted his supervisor and they decided "to go out to the Webster plant and make a search.” At Petrovick’s request Sergeant McBurney agreed to accompany him and another probation officer while they made the search because, as Petrovick noted, the probation officers were not armed.
They arrived at the Xerox plant at approximately 2 o’clock that afternoon. A security officer pointed out the defendant’s car, but the officers found that it was locked. The defendant was summoned and searched after Petrovick advised him, in general terms, that he had reason to believe that the defen *174 dant was "in violation of his probation.” Nothing was discovered during this search. Petrovick then asked the defendant for his car keys which the defendant said were in his locker. Petrovick searched the locker and found the keys, but no evidence of criminal conduct or violation of probation. The probation officers then searched the defendant’s car and found a small hand gun.
A proceeding was commenced to revoke probation. The defendant was also indicted for possessing a dangerous weapon. Before trial on the indictment a hearing was held with respect to the revocation of probation (see CPL 410.70). At the outset the defendant claimed that the search was illegal. The trial court held, however, that a probationer does not have the same rights as other citizens under the Fourth Amendment and that it is unnecessary for "a probation officer to obtain a warrant based upon probable cause in order to search the residence or automobile of a probationer.” The court also found that the defendant had violated probation by possessing the weapon (see CPL 410.10, subd 2). Probation was revoked and the defendant was sentenced to an indeterminate term of imprisonment for a maximum of seven years. The Appellate Division affirmed, without opinion (55 AD2d 1054).
We recently held in People v Huntley (43 NY2d 175) that a person on parole, although legally in custody and subject to supervision, is nevertheless constitutionally entitled to protection against unreasonable searches and seizures. A person on probation, subject to similar restraints (see CPL 410.50, subds . 1, 2) should be similarly protected. Of course the defendant’s status as a parolee or probationer is relevant in determining the reasonableness of the search (People v Huntley, supra, p 181). Whether the search of a person in custody and subject to continuing supervision is reasonable cannot be assessed according to the standard applicable to persons whose activities are not subject to such scrutiny.
In addition, with respect to probation officers, it is important to note that since 1971 their authority to search a person on probation has been governed by statute. CPL 410.50 (subd 3) states: "If at any time during the period of probation the court has reasonable cause to believe that the defendant has violated a condition of the sentence, it may issue a search order. Such order must be directed to a probation officer and may authorize such officer to search the person of the defendant and/or any premises in which he resides or any real or *175 personal property which he owns or which is in his possession.” The statute also permits a more limited search incident to an arrest. CPL 410.50 (subd 4) states: "When a probation officer has reasonable cause to believe that a person under his supervision pursuant to a sentence of probation has violated a condition of the sentence, such officer may, without a warrant, take the probationer into custody and search his person.” The statute further provides that a probation officer making an arrest or executing a search order "may be assisted by a police officer” (CPL 450.10, subd 5).
The substantive test, namely, "reasonable cause to believe that the defendant has violated a condition of the sentence”, apparently codifies case law which had generally held that the "test of what is reasonable as a prerequisite for a search of the person or property of a probationer or parolee is whether the search is consistent with the duty to supervise adherence to the conditions of probation or parole and the duty to influence the offender to refrain from unlawful conduct” (Preiser, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 410.50, p 149). This is essentially the same standard we have recently held should be used to determine the validity of a search of a person on parole by his parole officer (see People v Huntley, 43 NY2d 175, 181, supra).
In the Huntley case the parole officers had personal knowledge that the defendant had violated at least three conditions of his parole. He had failed to report on two occasions; he had quit his job without informing his parole officer and he had accepted welfare payments without obtaining permission. We noted that he had "demonstrated that he was thoroughly unreliable” and concluded that "the parole officer’s conduct in searching the apartment for a possible explanation of his otherwise unexplained failure to report was permissible”, particularly in view of the fact that he was not suffering from any apparent disability (People v Huntley, supra, p 182).
Here, however, there is no indication that the defendant had proved unreliable. There is no evidence that he failed to report and the record shows that he had been employed by Xerox for approximately nine years. There is only the anonymous accusation. The People note that the probation officer had a duty to investigate this complaint, which of course is true. But it does not follow from this that it was reasonable for the probation officer to begin the investigation by conducting a wholesale search of the defendant, his locker and his *176 automobile. Indeed the probation officer himself was unable to explain at the hearing why he and his superiors chose to investigate the complaint in this extreme manner. There was no apparent need for haste. The probation officers spent several hours discussing the matter. During those discussions it must have been noted that the defendant had not previously demonstrated that he was an unreliable probation risk, that the source of the information could not be assessed and that there were other methods for determining whether there was any substance to the claim. As far as this record shows the determination to investigate the complaint by conducting a thorough search was completely arbitrary.
To uphold the search in this case would hardly be consistent with the recognition of a probationer’s constitutional right to be free of unreasonable searches and seizures. If that right means anything it must at least mean that a probationer who has not previously violated the conditions of his sentence should not be subjected to a complete search of his person and property whenever his probation officer receives an anonymous phone call.
In addition, even if there was reasonable cause to conduct the search, the probation officers should not have acted without a court order. The statutory provisions cited earlier (CPL 410.50, subds 3, 4) also establish a procedure for the search of probationers which, it has been noted "is somewhat different than the procedure apparently authorized by prior case law. The CPL does not provide for a search of a probationer or his property without a court order except as incident to taking the probationer into custody” (Preiser, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 410.50, p 149).
That procedure was completely ignored in this case. The defendant was not taken into custody and subjected to a limited search of "his person” (CPL 410.50, subd 4). The defendant’s probation officer and his supervisor did not decide to take him into custody but determined instead "to go out to the Webster plant and make a search.” And even if the defendant had been taken into custody, authority to conduct a protective search of his person could not have extended to his locker and automobile. As the drafters of the statute noted "The authority to search in this case is more circumscribed than the authority to search in the case where the court issues a [search order]” (see Commission Staff Comment to the Proposed CPL, § 210.30, subd 3, now CPL 410.50, subd 4). Thus *177 a search of the defendant’s locker and car or any other "personal property which he owns” could only have been authorized by a search order (CPL 410.50, subd 3) and the probation officers had not obtained one.
This failure to obtain court approval was not justified by any exigency. Certainly the police officer who originally received the information felt no exigency since he waited until the following day to begiii his investigation. And, as indicated, the probation officers spent several hours debating the proper course and several hours more proceeding to the Xerox plant. In fact the record shows that when they received this information they were in their office, which is just one floor above the court where the defendant was sentenced. Under the circumstances there was more than enough time to submit the matter to the court as required by the statute.
Accordingly the order of the Appellate Division should be reversed and the motion to suppress granted, and the matter remitted to the County Court for further proceedings on the charge of violation of probation.