OPINION OF THE COURT
 

 Rosenblatt, J.
 

 As a condition of probation in connection with a negotiated plea and sentence, defendant consented in writing to provisions permitting his probation officer to search his person, his vehicle, and his “place of abode” for illegal drugs and narcotic implements, during the period of probation. Claiming that his. consent is legally inoperative, defendant asserts that the search provision is violative of his constitutional and statutory rights. We disagree, and hold that the provision served as a lawful basis for the seizure of evidence resulting in the charges on appeal.
 

 Defendant was initially convicted of Criminally Negligent Homicide (a class E felony under Penal Law § 125.10) and Operation of a Vessel While Under the Influence of Alcohol or Drugs (an offense under Navigation Law § 49-a [2]) for having caused the death of a young woman who was swimming when he struck her with his motor boat, which he operated while he was impaired. Considering that the homicide conviction carried a potential maximum of four years imprisonment, the prosecution, the defendant, and the court agreed to a disposition by which the defendant would plead guilty, and the court would impose a sentence of probation with stringent supervision. For his part, and in order to obtain the benefits of the negotiated plea and sentence, defendant signed the terms of probation and waived his right to appeal. The terms included mandatory drug testing and drug treatment when ordered by the Probation Department. It also included the provision at issue before us:
 

 
 *458
 
 “That you permit search of your vehicle and place of abode where such place of abode is legally under your control, and seizure of any narcotic implements and/or illegal drugs found, such search to be conducted by a Probation Officer or a Probation Officer and his agent.”
 

 There was evidence at the suppression hearing that after defendant had been on probation for several days, his probation officer reviewed the terms of probation with him, including the provision at issue, as well as defendant’s obligation to provide urine samples to detect controlled substances. Over the next several months, defendant tested positively for drugs on four occasions. The probation officer intermittently warned defendant that these results could lead to a violation of probation. He also visited defendant, and increased defendant’s drug counseling sessions, but eventually concluded that defendant would have to continue his probation in an in-patient program for cocaine abuse, and told him so.
 

 Shortly thereafter, approximately 10 months into the probation term, the probation officer received a call from the mother of the woman whose death defendant had caused. She told the probation officer that defendant was selling drugs out of his home and that she knew this because her son had bought drugs from him. Based on all of the circumstances and on the strength of the above-quoted condition of probation, the probation officer accompanied by the defendant
 
 [1]
 
 and by police officers, entered defendant’s house. In the ensuing search, the authorities discovered rifles, shotguns, illicit drugs, and a scale, resulting in defendant’s indictment for the instant drug and weapon charges.
 

 Defendant moved to suppress the evidence, contending that in the absence of a search warrant, exigent circumstances, or a voluntary, contemporaneous consent, a probationer may be searched only if a court has issued a CPL 410.50 (3) search order. He claims that notwithstanding the consent-search provision, the search in issue violated his constitutional and statutory rights. After a hearing, Supreme Court agreed and granted
 
 *459
 
 defendant’s motion to suppress. The Appellate Division reversed the suppression order. A Judge of this Court granted leave to appeal and we now affirm.
 

 We begin with the premise that a probationer’s home is protected by the constitutional requirement that searches be reasonable
 
 (see,
 
 US Const 4th Amend; NY Const, art I, § 12;
 
 see also, Griffin v Wisconsin,
 
 483 US 868, 873;
 
 People v Jackson,
 
 46 NY2d 171, 177). It all comes down to what is “reasonable” under the circumstances, bearing in mind that the reasonableness of a search is measured by, among other things, the relative privacy expectation and entitlement of the person to be searched. For example, a defendant on probation does not stand in the same constitutional shoes as someone entirely free of judicial supervision and control. At one extreme, a person who has just been lawfully placed under arrest for armed robbery has an expectation of privacy vastly inferior to a law-abiding citizen who is enjoying a quiet evening at home. A defendant on probation is at neither extreme of the constitutional spectrum.
 

 Griffin v Wisconsin
 
 (483 US 868,
 
 supra)
 
 takes us part way toward resolving the issue before us. It establishes that under Fourth Amendment law as applied to probation searches the Constitution does not call for standard adherence to the usual warrant and probable cause requirements. In
 
 Griffin
 
 the Supreme Court pointed out that probationary status — which, like parole,
 
 [2]
 
 involves conditional as opposed to absolute liberty — falls under a “special needs” category that may justify departures from the customary constitutional standards that apply in other settings (483 US at 873-874).
 

 The
 
 Griffin
 
 Court, however, did not simply dispense with the warrant requirement and let it go at that. The Court recognized, as this Court did in
 
 People v Jackson
 
 (46 NY2d 171,
 
 supra),
 
 that a probationer loses some privacy expectations and some part of the protections of the Fourth Amendment, but not all of both. In
 
 Griffin,
 
 the warrantless probation search was conducted pursuant to a probation regulation promulgated under the Wisconsin State Administrative Code that satisfied the Fourth Amendment’s reasonableness requirement (483 US
 
 *460
 
 at 873).
 
 [3]
 
 In the case before us the search was not conducted pursuant to a State regulation but under a provision which, we hold, carries as much if not more constitutional weight: a court-ordered probationary condition, based on a negotiated sentence, and the written, counseled consent of the probationer.
 
 [4]
 

 Although this Court has never addressed the issue of whether a consent search provision may be enforceable as a condition of probation, we note that such provisions have withstood constitutional challenge
 
 (see, e.g., United States v Germosen,
 
 139 F3d 120 [2d Cir 1998],
 
 cert denied
 
 — US —, 119 S Ct 829;
 
 United States v Schoenrock,
 
 868 F2d 289 [8th Cir 1989];
 
 People v Bravo,
 
 43 Cal 3d 600, 738 P2d 336,
 
 cert denied
 
 485 US 904;
 
 State v Gawron,
 
 112 Idaho 841, 736 P2d 1295;
 
 see generally,
 
 Comment,
 
 The Fourth Amendment Rights of Probationers: What Remains After Waiving Their Right to Be Free From Unreasonable Searches and Seizures?,
 
 35 Santa Clara L Rev 1237 [1995]; Comment,
 
 Conflicting Perspectives from the Bench and the Field on Probationer Home
 
 Searches—
 
 Griffin v Wisconsin Reconsidered,
 
 1989 Wis L Rev 607 [1989]; Annotation,
 
 Validity of Requirement that, as Condition of Probation, Defendant Submit to Warrantless Searches,
 
 79 ALR3d 1083).
 

 We agree with this line of authority insofar as the court-ordered provision and consent were circumscribed to specified types of searches by probation officers acting within the scope of their supervisory duty and in the context of the probationary goal of rehabilitation. In making this determination, we note that a probationer’s status is defined by a number of considerations that have been developed under statutory and decisional
 
 *461
 
 law. They relate, in the main, to the mix of freedom and restriction that comprises the condition of probation.
 

 In New York, as in other jurisdictions, a sentence of probation is an option among various sentencing alternatives short of confinement. The probationer, although not physically confined, remains “in the legal custody of the court” for the probationary period (GPL 410.50 [1];
 
 People v Rodney E.,
 
 77 NY2d 672, 675). Probation contemplates and even requires a level of official supervision substantial enough “to insure that the defendant will lead a law-abiding life” (Penal Law § 65.10 [1]) or to assist the probationer toward that goal
 
 (see,
 
 Penal Law § 65.10 [1]). In keeping with the objective, a sentencing court will typically include a number of standard, statutorily based requirements of probation relating to treatment, employment, restitution, affiliations, family obligations, community service, or other concerns. This statutory list (Penal Law § 65.10 [2] [a]-[k]) does not purport to be complete, nor must every requirement be imposed in every case
 
 (see generally,
 
 Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 65, at 300-307). The conditions and requirements are to be tailored to suit the probationer, and for that reason Penal Law § 65.10 (2) (Z) empowers the sentencing court to require that the probationer “[s]atisfy any other conditions reasonably related to his rehabilitation.”
 

 In reviewing the thrust of the probationary sentence before us, we conclude readily that the court concentrated on the statutory goal that the conditions be fundamentally rehabilitative
 
 (People v McNair,
 
 87 NY2d 772, 774;
 
 People v Letterlough,
 
 86 NY2d 259, 265), and imposed them accordingly. The condition in dispute was calculatedly included among the terms of probation because all parties were ostensibly seeking the same objective: that defendant refrain from abusing drugs. In addition to the standard conditions set forth under Penal Law § 65.10 (2) (a) through (k) the court individualized defendant’s probationary plan to comport with the nature of the original conviction and what it considered appropriate to further defendant’s rehabilitative prospects, given his background, history, and proclivities. Among the additional conditions, the court ordered defendant to perform community service, to undergo drug testing when directed by the Probation Department, and to enter a drug treatment facility, if warranted. Defendant, represented by counsel, signed both the standard and the additional terms, attesting that he understood them and would abide by them.
 

 
 *462
 
 These conditions are not punitive or misdirected. Considering that the program was designed to keep defendant free of drugs, one way to encourage him to do so was to hold out the possibility that he would be checked up on, and stood to be incarcerated if he betrayed the terms of his negotiated probationary status. The additional conditions were individually tailored in relation to the offense, and were reasonably related to defendant’s rehabilitation
 
 (see, e.g., United States v Germosen,
 
 139 F3d 120, 131-132 [2d Cir 1998],
 
 cert denied
 
 — US —, 119 S Ct 829,
 
 supra; United States u Phaneuf,
 
 91 F3d 255, 262-264 [1st Cir 1996];
 
 United States v Wesley,
 
 81 F3d 482 [4th Cir 1996];
 
 United States v Thurlow,
 
 44 F3d 46 [1st Cir 1995],
 
 cert denied
 
 514 US 1121;
 
 United States v Sharp,
 
 931 F2d 1310 [8th Cir 1991];
 
 Owens v Kelley,
 
 681 F2d 1362 [11th Cir 1982]). As such, they provided an appropriate basis for the search and seizure of the contraband
 
 (see, e.g., United States v Vincent,
 
 167 F3d 428 [8th Cir 1999];
 
 United States v Ooley,
 
 116 F3d 370, 372 [9th Cir 1997],
 
 cert denied
 
 — US —, 118 S Ct 2391;
 
 State v Morgan,
 
 206 Neb 818, 295 NW2d 285 [1980];
 
 State v Perbix,
 
 331 NW2d 14 [ND 1983]). Moreover, the probation officer, although accompanied by the police, initiated and undertook the search by virtue of his own responsibility for and relationship with the defendant, as his supervisor, motivated by his duty to monitor the terms of defendant’s probation and rehabilitation
 
 (see, United States v Ooley,
 
 116 F3d 370 [9th Cir 1997],
 
 cert denied
 
 — US —, 118 S Ct 2391,
 
 supra).
 

 Defendant argues that this Court’s decision in
 
 People v Jackson
 
 (46 NY2d 171,
 
 supra)
 
 supports his claim that the search violated his constitutional and statutory rights.
 
 Jackson,
 
 however, involved a summary search by a probation officer acting solely on an anonymous phone call. There was no court-ordered search condition of probation, let alone defendant’s consent to one. The Court found that the authorities summarily conducted “a wholesale search of the defendant, his locker and his automobile” (46 NY2d at 175-176), even though CPL 410.50 (3) was available.
 

 CPL 410.50 (3) reads as follows:
 

 “Search order. If at any time during the period of probation the court has reasonable cause to believe that the defendant has violated a condition of the sentence, it may issue a search order. Such order must be directed to a probation officer and may au
 
 *463
 
 thorize such officer to search the person of the defendant and/or any premises in which he resides or any real or personal property which he owns or which is in his possession.”
 

 Although this section authorizes court-ordered searches, there is nothing in it or in
 
 Jackson
 
 to support defendant’s assertion that CPL 410.50 (3) preempts the lawfulness of the search in issue. Indeed, pursuant to the very next section, CPL 410.50 (4), a probation officer may take a probationer into custody and conduct a personal search when the probation officer has reasonable cause to believe that the probationer has violated a condition of the sentence. The section contemplates that the probation officer may do so without any court order or any prior court-imposed condition of probation. We conclude, therefore, that the constitutionality of a search provision ordered by a court in a sentence of probation as part of a negotiated agreement by the probationer was not defeated by the availability of CPL 410.50 (3).
 

 Defendant contends that his consent may not be based on his having signed the conditions of probation, and that any such consent was the product of coercion. We disagree with this contention to the extent that defendant claims that his consent is invalid as a matter of law.
 
 [5]
 
 In order to obtain the benefits of a favorable sentence, defendant negotiated an agreement that assured his avoidance of a prison term. He had no “right” to a sentence of probation
 
 (People v Oskroba,
 
 305 NY 113, 118;
 
 People v Berkley,
 
 152 AD2d 788, 790) and he sought the probation sentence, along with its obligations and its obvious benefits, as a far more desirable disposition than the potential alternative.
 

 Defendant argues that his consent, although the result of a negotiated plea, was a manifest “fiction” and not truly voluntary because, he claims, he did not have a realistic choice in the matter. The answer to this argument is simply that any defendant who, for example, bargains for a 10-year sentence to avoid a possibly longer one may be acting out of a sense of constraint, yet voluntarily “offers” to surrender a decade of liberty. A defendant’s offer to surrender a measure of liberty or privacy cannot be considered voluntary in every sense of the word, but
 
 *464
 
 it is not involuntary as a matter of law. We recognize that negotiated sentences by their very nature involve inducements, relinquishments, and constraints, and are routinely characterized not only as voluntary but also as knowing and intelligent.
 

 In the case before us, the defendant negotiated an arrangement by which he would be able to remain at liberty in exchange for a surrender of some of his rights, including a diminished expectation of privacy. Under these circumstances we reject defendant’s argument that he was coerced as a matter of law.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order affirmed.
 

 [1]
 

 . At the suppression hearing there was evidence that defendant did not object to the search when it was conducted. That acquiescence, however, was ostensibly based on his earlier, written consent to the terms of probation. The People do not rely on defendant’s acquiescence at the scene as justification for the search. Accordingly, and because it is not relevant to the issues before us, we need not and do not attempt to characterize defendant’s reaction to the search at the time it was conducted.
 

 [2]
 

 . Even though parolees are often said to occupy a position that for constitutional purposes is like probationers
 
 (see, e.g., Griffin v Wisconsin,
 
 483 US 868, 874,
 
 supra; People v Dyla,
 
 142 AD2d 423, 440;
 
 United States v McFarland,
 
 116 F3d 316 [8th Cir 1997],
 
 cert denied
 
 522 US 961), we limit our analysis to probationers, and do not attempt to demarcate whatever distinctions may exist between the two classifications.
 

 [3]
 

 . Before
 
 Griffin
 
 was decided there had been considerable debate over the warrant requirement relative to probationers
 
 (see, e.g.,
 
 Note,
 
 Fourth Amendment Limitations on Probation and Parole Supervision,
 
 1976 Duke LJ 71 [1976]; Williamson,
 
 Search and Seizure Rights of Parolees and Probationers in the Ninth Circuit,
 
 44 Fordham L Rev 617 [1975]; Note,
 
 Striking the Balance Between Privacy and Supervision: The Fourth Amendment and Parole and Probation Officer Searches of Parolees and Probationers,
 
 51 NYU L Rev 800 [1976]; White,
 
 The Fourth Amendment Rights of Parolees and Probationers,
 
 31 U Pitt L Rev 167 [1969]). In deciding that the “operation of a probation system * * * presents ‘special needs’ beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements,” the
 
 Griffin
 
 Court (483 US 868, 873-874,
 
 supra)
 
 addressed some but not all of the issues raised in this body of scholarship.
 

 [4]
 

 . Considering that the case before us is based upon a consent provision we do not undertake to decide whether, when and to what extent a sentencing court may unilaterally impose search conditions in a sentence of probation.
 

 [5]
 

 . To the extent that he rests his coercion claim on a factual basis, we note that he did not raise this issue below. At no point did he timely claim that his consent was the product of confusion, mistake or any of the other factual assertions that could undermine the knowing and intelligent entry of a guilty plea. Such an argument is therefore unpreserved for our review.