People v Brazeal
2026 NY Slip Op 03910
June 23, 2026
Court of Appeals
Halligan, J.
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

The People & c., Respondent,
v
Jarelle Brazeal, Appellant.
The People & c., Respondent,
v
Miguelina Lora, Appellant.

Decided on June 23, 2026
No. 45

No. 45:
Tammy E. Linn, for appellant.
Michael Bierce, for respondent.
District Attorneys Association of the State of New York, amicus curiae.
No. 46:
Naila S. Siddiqui, for appellant.
Charles T. Pollak, for respondent.
District Attorneys Association of the State of New York, amicus curiae.

[*1]
In People v Brazeal (Jarelle), No. 45:
Order modified by striking the Box 28 search condition from defendant's probationary term and, as so modified, affirmed. Chief Judge Wilson and Judges Rivera, Cannataro and Halligan concur, Judge Halligan in an opinion in [*2]which Chief Judge Wilson and Judge Cannataro concur and Judge Rivera in a separate concurring opinion. Judge Troutman dissents and votes to affirm in an opinion, in which Judges Garcia and Singas concur.
Decided June 23, 2026
In People v Lora (Miguelina), No. 46:
Order affirmed. Opinion by Judge Halligan. Judges Garcia, Singas, Cannataro and Troutman concur. Judge Rivera dissents in an opinion, in which Chief Judge Wilson concurs.
Decided June 23, 2026
Halligan, J.
When a court sentences a defendant to a term of probation, it may impose conditions that "the court, in its discretion, deems reasonably necessary to insure that the defendant will lead a law-abiding life or to assist [them] to do so" (Penal Law § 65.10 [1]). One example is a consent-to-search condition, whereby a probationer agrees to submit to searches by probation officers. As with all probation conditions, it is permissible only if tailored to the defendant's underlying conviction and individual circumstances.
In this pair of cases, both defendants argue that the consent-to-search provision imposed as a condition of probation was not reasonably related to the specifics of their cases. In People v Brazeal, we agree that it was not, because while the defendant was convicted of a crime of violence, he had no record of weapons possession, minimal criminal history, and no history of substance abuse problems. We decline to reach the merits of the defendant's challenge in People v Lora because it was unpreserved for our review.
[*3]I.
People v Brazeal
Defendant Jarelle Brazeal was arrested following a domestic altercation in which he stabbed his husband in the chest with a kitchen knife. He was indicted on charges of attempted murder in the second degree (Penal Law §§ 110, 125.25 [1]), assault in the first degree (id. § 120.10 [1]), assault in the second degree (id. § 120.05 [2]), assault in the third degree (id. § 120.00 [1]), and criminal possession of a weapon in the fourth degree (id. § 265.01 [2]). Brazeal pleaded guilty to attempted assault in the second degree in full satisfaction of the indictment and executed an appeal waiver. In exchange, the People recommended a sentence of five years' probation, an order of protection in the complainant's favor, and participation in the 26-week Abusive Partner Intervention Program (APIP).
Although Brazeal admitted to occasional marijuana use in the past, the record indicates that no further assessment was needed for mental health and substance abuse. Brazeal was adjudicated a youthful offender in 2007 on an assault charge and was separately convicted of a 2009 harassment violation in New York. The record also indicates that he had 2013 misdemeanor property damage conviction in Las Vegas and a 2014 warrant for failure to appear in Atlanta FN1. The Department of Probation concurred with the Court's promise of probation and APIP for the defendant, but also requested that, due to the violent nature of the offense, Box 28 (consent to warrantless search) on the Conditions of Probation be checked off and Brazeal be required to comply with any programs or referrals proposed by the Department.
At sentencing, defense counsel objected to imposition of the consent-to-search condition, noting that this was not "a gun case where that Box 28 request is typically done," that Brazeal pleaded guilty to attempted assault, and that the weapon alleged was "a common household knife." Although the People initially supported imposition of the condition, later in the hearing the prosecutor stated that they took no position on the issue. The court imposed the condition due to "the violent nature of th[e] offense" and because of Brazeal's criminal record, which included "out-of-state contacts" that "also involve[d] violence."
The Appellate Division affirmed (see 235 AD3d 890 [2d Dept 2025]). The Court concluded that Brazeal's challenge to the consent-to-search provision survived his appeal waiver, a point that the People did not contest (see id. at 892). The Court held that the condition had been properly imposed because Brazeal "used a weapon during the underlying offense" and had a "history of violence" (id. [internal quotation marks omitted]). The Court also rejected Brazeal's argument that the condition was improper because he did not specifically consent to it as part of his plea agreement (see id.). A Judge of this Court granted Brazeal leave to appeal (see 43 NY3d 1044 [2025]).
People v Lora
Defendant Miguelina Lora swiped a parked vehicle with her boyfriend's truck, exited, stumbled around, then reentered the truck and drove away. Responding officers discovered her asleep in the driver's seat a short distance from the crash site. Upon waking her, the officers observed Lora to have bloodshot, watery eyes, slurred speech, a strong odor of alcohol on her breath, and unsteady balance upon exiting the vehicle. At the time of her arrest, Lora admitted to having consumed alcohol, and officers discovered a half empty bottle of brandy in the front seat of the truck. A breathalyzer reading showed that at that time Lora's blood alcohol content (BAC) was .279%. She did not present a license. A record search indicated that her license was at that time revoked and had previously been suspended 22 times. Lora was indicted on a range of charges, including aggravated driving while intoxicated (Vehicle and Traffic Law § 1192 [2-a]), two counts of driving while intoxicated (id. § 1192 [2], [3]), two counts of aggravated unlicensed operation of a motor vehicle in the first degree (id. § 511 [3] [a] [i]-[ii]), and one count of operating a motor vehicle without an ignition interlock device (id. § 1198 [9]). Lora had four prior arrests, resulting in one misdemeanor conviction for driving while ability impaired by alcohol and two felony convictions for driving while intoxicated.
Lora pleaded guilty to the top count of aggravated driving while intoxicated, a class E felony. In exchange for her plea, the court indicated it would allow her to participate in a substance abuse program and, if she was successful, would sentence her to five years' probation, a one-year license suspension, Victim Impact Panel, and a thousand dollar fine. The court also noted that she would be required to install an ignition interlock device on any vehicle she owned or operated. After successfully completing the substance abuse program, Lora returned for sentencing and the court imposed the promised sentence, along with five written conditions of probation, including the consent-to-search provision. At no point did Lora object to the imposition of any of the probation conditions.
The Appellate Division affirmed (see 236 AD3d 820 [2d Dept 2025]). The Court held that "the consent to search condition of probation was properly imposed as it was individually tailored in relation to the offense and was, therefore, reasonably related to the defendant's rehabilitation, or necessary to ensure that the defendant will lead a law-abiding life" (id. at 821). The Court underscored that Lora "operated a motor vehicle with a [BAC] of approximately .279%" and "was convicted of aggravated driving while intoxicated" (id.). A Judge of this Court granted Lora leave to appeal (see 43 NY3d 1056 [2025]).
II.
On appeal, both defendants assert that the consent-to-search provision was illegal because it was not tailored to their particular circumstances. The condition is identical for both defendants and reads: "28. Consent to a search, conducted by a Probation Officer or a Probation Officer and his or her agent, of his/her person, vehicle and place of abode (when such place of abode is legally under his/her control), and the seizure of any illegal drugs, drug paraphernalia, gun/firearm or other weapon or contraband found."FN2 A consent-to-search provision, like any probation condition, must be "reasonably related" to a defendant's rehabilitation or appropriate to ameliorate the conduct that lead to the offense.
A.
The probation statute authorizes the imposition of conditions "such as the court, in its discretion, deems reasonably necessary to insure that the defendant will lead a law-abiding life or to assist [them] to do so" (Penal Law § 65.10 [1]). The statute lists several possible conditions (see id. § 65.10 [2] [a]-[k-2]); although the consent-to-search provision is not expressly authorized, a catchall subdivision permits the sentencing court to require that defendants "[s]atisfy any other conditions reasonably related to [their] rehabilitation" (id. § 65.10 [2] [l]). Subdivision three, entitled "[c]onditions related to supervision," enumerates certain conditions that must be imposed as part of every probationary sentence. Subdivision four relates to the court's imposition of electronic monitoring as a condition of probation. A separate subdivision provides that the court may order the defendant, "in addition to any conditions imposed pursuant to subdivisions two, three and four of this section," to "comply with any other reasonable condition as the court shall determine to be necessary or appropriate to ameliorate the conduct which gave rise to the offense or to prevent the incarceration of the defendant" (id. § 65.10 [5]).
As we explained in People v Letterlough (86 NY2d 259 [1996]), "[t]he overriding purpose of imposing a sentence of probation in lieu of other punishment is to rehabilitate" (id. at 264). Accordingly, a probation condition is "within the parameters of the probationary sentencing structure authorized by Penal Law § 65.10" if it is "geared towards rehabilitating a probationer because it relates to the correction of the underlying . . . problem at the root of defendant's criminal behavior" (id. at 265-266). The determination of appropriate conditions is committed to the discretion of the sentencing court (see id. § 65.10 [1]). Pursuant to this abuse of discretion standard, "findings made by" the lower courts that "are supported in the record" are "beyond the scope of our review" (People v Angela VV., 44 NY3d 1061, 1063 [2025]), provided that the sentencing court "acted within the parameters of the probationary sentencing structure" (People v Hakes, 32 NY3d 624, 628 [2018], quoting Letterlough, 86 NY2d at 265).
In People v Hale (93 NY2d 454 [1999]), we upheld the imposition of a consent-to-search provision as a valid exercise of the sentencing court's authority. The defendant in Hale was sentenced to a term of probation after an incident in which he operated a motorboat while intoxicated and killed a woman. After receiving a tip that the defendant was selling drugs, law enforcement searched his home pursuant to a consent-to-search condition similar to the one at issue here. The defendant challenged both the condition and the search itself. We upheld the condition, [*4]finding that the court "individualized defendant's probationary plan to comport with the nature of the original conviction and what it considered appropriate to further defendant's rehabilitative prospects, given his background, history, and proclivities" (id. at 461) and probation officers' "supervisory duty" to "insure that the defendant will lead a law-abiding life" (id. at 460, 461, quoting Penal Law § 65.10 [1]). The condition was "calculatedly included among the terms of probation because all parties were ostensibly seeking the same objective: that defendant refrain from abusing drugs" (id. at 461). We observed that "one way to encourage" the defendant to "keep [ ] free of drugs" "was to hold out the possibility that he would be checked up on," and that the condition was therefore "individually tailored in relation to the offense" and "reasonably related to the defendant's rehabilitation" (id. at 462).FN3
B.
People v Brazeal
We conclude that the sentencing court abused its discretion in imposing the consent-to-search condition on Brazeal. Although his conviction was for a crime of violence, at no point was Brazeal shown to otherwise possess firearms or illegal weapons, and the knife used in his crime was an ordinary kitchen knife. The Appellate Division referenced his "history of violence" (225 AD3d at 892), but that characterization overstates the defendant's relatively remote criminal history. He had a previous conviction for property destruction in Las Vegas, a harassment conviction with "physical contact" in the Bronx, and a youthful offender adjudication for assault in Yonkers, the most recent of which was almost a decade before the present offense. The 2007 youthful offender adjudication is the only other incident that references the use of an unspecified "weapon/instrument," and only the 2007 and 2009 proceedings included assault charges. None of Brazeal's arrests in Georgia resulted in further prosecution apart from an outstanding warrant for failure to appear. Aside from these facts, the record reflects no basis for the imposition of the condition. Brazeal has not been assessed as being in need of alcohol or substance abuse treatment, the People concede that substance abuse is not implicated in his case, and his admission of occasional marijuana use in the past does not support further supervision. On this record, the sentencing court abused its discretion by imposing a condition that was not "individually tailored in relation to the offense[ ]" or to Brazeal's "rehabilitation" (Hale, 93 NY2d at 462). Accordingly, we do not reach Brazeal's remaining challenges to the condition.
[*5]C.
People v Lora
Because she did not object to the consent-to-search condition before the sentencing court, Lora's statutory and constitutional challenges are unpreserved for our review FN4. Our jurisdiction is limited to "questions of law" (NY Const, art VI, § 3), and we "have long maintained that, absent certain limited exceptions, a reviewable question of law exists only if it was presented to the trial court in the first instance" (People v Cabrera, 41 NY3d 35, 42 [2023]). Thus, as a general matter, contentions "which were not raised at trial may not be considered for the first time on appeal" (People v Thomas, 50 NY2d 467, 471 [1980]; see also CPL 470.05 [2]). This rule "gives the parties an essential opportunity to probe relevant factual and legal issues, thereby ensuring that the record before this Court reflects a full airing of the points that bear upon an ultimate merits determination" (Cabrera, 41 NY3d at 43). It also helps "preserve limited judicial resources and avoid untoward delay in the resolution of criminal proceedings" by giving the trial court "an opportunity to correct any error . . . at a time when the issue can be dealt with most effectively" (People v Lopez, 71 NY2d 662, 665 [1988] [internal quotation marks omitted]).
There is, however, " 'a narrow exception to the preservation rule' . . . where a court exceeds its powers and imposes a sentence that is illegal in a respect that is readily discernible from the trial record" (People v Nieves, 2 NY3d 310, 315 [2004], quoting People v Samms, 95 NY2d 52, 56 [2000]). We have described such challenges as implicating "the 'essential nature' of the right to be sentenced as provided by law" (People v Fuller, 57 NY2d 152, 156 [1982], quoting People v Craig, 295 NY 116, 120 [1946]; see also Letterlough, 86 NY2d at 263 n 1). Admittedly, this formulation is susceptible of a capacious interpretation, but a broad application of the "illegal sentence" exception could conceivably extend to almost any error in a sentencing proceeding and swallow the preservation rule. We have thus emphasized that "not all claims arising during a sentencing proceeding fall within the exception" (Nieves, 2 NY3d at 315), notwithstanding that they might be construed as going to the legality of a sentence (see People v Callahan, 80 NY2d 273, 281 [1992] [rejecting "the label defendant assigned to his appellate claim" in invoking the illegal sentence exception because "the gist" of the argument fell outside its parameters]).
A review of our precedent indicates we have excused the preservation requirement for challenges to "the fundamental sentencing power of the trial court . . . where the illegality of a sentence can readily be discerned from the trial record" (People v Pena, 28 NY3d 727, 730 [2017]). In such cases, additional factual development by the court of first instance is unnecessary to decide a challenge on appeal. That was the case in People v Fuller, in which the sentencing court violated the applicable statute by delegating the power to fix the conditions of restitution to the Probation Department (see 57 NY2d at 154-155). Similarly, we have dispensed with preservation when defendants assert that a court imposed a multiple felony offender sentence or consecutive sentences in contravention of the relevant statutes (see People v Sabb, — NY3d —, —, 2026 NY Slip Op 01590, *2-3 [2026] [defendant asserted that consecutive sentencing was not statutorily authorized because the accusatory instrument did not indicate that the convictions were the result of separate criminal transactions]; People v Morse, 62 NY2d 205, 214-215 & n 2 [1984] [defendants argued that sentencing courts exceeded their power when their predicate convictions predated the statute classifying the underlying crimes as violent felonies]); People v Santiago, 22 NY3d 900, 903 [2013] [defendant argued that he was too young at the time of his prior conviction for it to qualify as a predicate offense under New York law]); People v Samms, 95 NY2d 52, 55-56 [2000] [defendant's sentence as a second violent felony offender was "unauthorized" because he had not been sentenced on the predicate offense before committing the crimes underlying the conviction at issue]).
Conversely, we have required preservation when the gravamen of the defendant's argument is that the imposed sentence is impermissible in the circumstances of that particular case. "[C]hallenges to the court's procedures, evidentiary disputes[,] and claims that rely on documents or facts not otherwise developed in the record must be preserved" (Nieves, 2 NY3d at 316, citing People v Horne, 97 NY2d 404, 414 n 3 [2002] [challenge to the amount of restitution]; see also People v Smith, 73 NY2d 961, 962-963 [1989] [challenge concerning whether a [*6]predicate offense was equivalent to a New York felony]; People v Oliver, 63 NY2d 973, 974-975 [1984] [challenge to the manner in which a persistent felony offender hearing was conducted]; Callahan, 80 NY2d at 281 [requiring preservation of a claim that "was addressed merely to the adequacy of the procedures the court used to arrive at its sentencing determination"]). We have also held that preservation is required for a claim that a particular sentence constitutes cruel and unusual punishment (see Pena, 28 NY3d at 730; People v Ingram, 67 NY2d 897, 899 [1986]).
Contrary to the dissent (see Rivera, J., dissenting op at 11), we do not understand the crux of Lora's challenges to be that the consent-to-search condition lies entirely outside the menu of options available to sentencing courts as they craft an appropriate probationary sentence, but rather that the condition was improperly imposed on her in light of her background and the nature of the underlying offense (see e.g. brief for appellant at 11 [arguing that "th(e) condition is unrelated to (defendant's) rehabilitation and unnecessary to ensure that she will lead a law abiding life"]; id. at 24 [arguing that the condition is unconstitutional in her case due to the lack of a "direct nexus between (her) offense and the authorization of a suspicionless search"]). Her arguments thus fall into the class of claims that should be subject to preservation in order to allow the parties "to probe relevant factual and legal issues" (Cabrera, 41 NY3d at 43) and to give the lower court an opportunity to address the claim "at a time when the issue can be dealt with most effectively" (Lopez, 71 NY2d at 665).
Preservation is especially important in this context because the imposition of probation conditions is committed to the discretion of the trial court, and indeed we have identified no circumstances where this Court has excused preservation for a challenge to a trial court's discretionary ruling. Had Lora made a timely objection, the parties would have had a chance to develop arguments about the propriety of this specific condition, and the sentencing court could have explained why it found the condition appropriate or adjusted the terms of her probation, both of which might well have facilitated appellate review of her claims. The dissent's conclusion that the condition is impermissible as to weapons, but not alcohol or drugs (see Rivera, J., dissenting op at 6-7), underscores this point. Lora, like Brazeal, does not ask us to selectively edit the standard probation condition in this manner FN5. Had she done so below, however, the court could have considered whether to tailor the condition "at a time when the issue" could have been "dealt with most effectively" (Lopez, 71 NY2d at 665)FN6. Should Lora ever be subject to a search, she retains the ability to challenge its reasonableness (see Hale, 93 NY2d at 458).
Our prior cases that considered unpreserved challenges to probation conditions under Penal Law § 65.10 do not counsel a different result. In Letterlough, we held that the sentencing court exceeded its statutory power in requiring a defendant to affix a sign stating "CONVICTED DWI" to his license plate because the condition was punitive and deterrent in nature, not rehabilitative; nothing in our determination rested on the specific circumstances of the defendant's background or the underlying offense (see 86 NY2d at 261, 269). In People v Hakes, we entertained an unpreserved challenge to a requirement that the defendant bear the cost of electronic monitoring that turned on whether the statute permitted imposition of such a condition on probationers (see 32 NY3d 624, 626-627 [2018]). These cases present contentions that a sentencing court lacked authority under Penal Law § 65.10 to impose a specific condition at all, not that the condition was unwarranted given the circumstances of a particular defendant.FN7
Accordingly, in Brazeal, the order of the Appellate Division should be modified by striking the Box 28 search condition from the defendant's probationary term and, as so modified, affirmed. In Lora, the order of the Appellate Division should be affirmed.
RIVERA, J. (concurring in the result in People v Brazeal, dissenting in People v Lora):
In these joint appeals challenging an identical probation condition, defendants request that we strike the condition in toto as lacking record support in their respective cases. The condition at issue requires each defendant to consent to searches and seizures by the probation department, without suspicion of illegal activity or a violation of a probation or conditional discharge term. Because the condition is not tailored to the respective circumstances and rehabilitative goals of each defendant, I would strike the condition in both appeals.
I.
The probation condition challenged by these defendants provides:
"Consent to a search, conducted by a Probation Officer or a Probation Officer and his or her agent, of his/her person, vehicle and place of abode (when such place of abode is legally under his/her control), and the seizure of any illegal drugs, drug paraphernalia, gun/firearm or other weapon or contraband found."
This "consent to search and seizure" requirement—numbered 28—is one of a series of conditions listed on template forms UCS-965 and UCS-965.5%, used respectively by the lower courts in each of these appeals. These forms list several standard and discretionary probation conditions that sentencing courts are authorized to impose under CPL 410.10 and Penal Law § 65.10. Both forms include a box labelled "Other", where Supreme Court may include additional conditions not reflected in the standard forms. Kings County Supreme Court in Brazeal, checked the box next to the "consent to search and seizure" condition to mandate the defendant's compliance with that provision. The form used by Queens County Criminal Court in Lora is slightly different because it does not set forth a mandatory list of conditions and instead provides enumerated terms with an individual check box that a court uses to manually select the conditions imposed. Unchecked conditions are not applicable to the defendant.
The consent to search and seizure condition is not expressly provided in Penal Law § 65.10, which sets forth specific conditions that a sentencing court may impose as part of a sentence of probation or conditional discharge (see Penal Law § 65.10 [2] [a]-[k-2]). Rather, under Section 65.10 (2) (l), a sentencing court is empowered to order a defendant to "[s]atisfy any other conditions reasonably related to [their] rehabilitation." Further, a court imposing probation, as in these appeals, may also "require that the defendant comply with any other reasonable condition as the court shall determine to be necessary or appropriate to ameliorate the conduct which gave rise to the offense or to [*7]prevent the incarceration of the defendant" (Penal Law § 65.10 [5]). Probation is not punitive. As this Court explained in People v Letterlough, "[a] probationary sentence 'is a method of offering an offender an opportunity to rehabilitate [themselves], without institutional confinement, under the supervision of a probation officer and the continuing power of the court to use a more stringent sanction in the event the opportunity is abused' " (86 NY2d 259, 264 [1995], quoting William C. Donnino, Prac Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law art 65, at 204 [internal quotation marks and citations omitted]). The Court discussed at length the singular importance of rehabilitation to the broader probation framework:
"The overriding purpose of imposing a sentence of probation in lieu of other punishment is to rehabilitate the convicted [person] by giving [them] appropriate treatment, in order to return [them] to society so reformed that [they] will not desire or need to commit further crimes. As has been aptly noted, it is perhaps not entirely correct to call this treatment punishment, as the emphasis is away from making the probationer suffer and in the direction of making [their] life better and more pleasant.
The utility of rehabilitation as a vehicle for preventing criminal behavior rests upon the belief that human behavior is the product of antecedent causes, that these causes can be identified, and that on this basis therapeutic measures can be employed to effect changes in the behavior of the person treated. The focus of rehabilitation is primarily on healing the individual." (id. [internal quotation marks and citations omitted]).
Thus, a probation condition authorizing a search of a defendant's person or property must be "circumscribed to specified types of searches by probation officers acting within the scope of their supervisory duty and in the context of the probationary goal of rehabilitation" (People v Hale, 93 NY2d 454, 460 [1999] [emphasis added]). Ultimately, "the decision to sentence a defendant to probation as an alternative to jail or prison reflects a determination by the sentencing court that both society and the defendant would be better served by the individual's closely supervised release into the community, provided that certain reasonable conditions are met." (People v Hakes, 32 NY3d 624, 630-631 [2018]).
A review of Section 65.10's plain text confirms this. A judicially imposed condition not specifically listed in subsection (2) (a) through (k-2) and instead imposed under subsection (2) (l) or (5)'s general grants of authority must be designed in furtherance of rehabilitation or to prevent reincarceration of a defendant. A court has no authority to impose a condition that fails to advance—or undermines—these legislative goals. The same is true for any specific term included within a particular condition, as in the consent to search and seizure condition at issue here, which allows a probation officer or agent to search a defendant's person, vehicle, and residence and to seize any illegal drugs, drug paraphernalia, firearms, weapons, or other "contraband" found during that search. In cases where a condition or term within a condition violates this standard, the lower appellate courts have struck the offensive language or modified the term, leaving all properly imposed conditions and terms in effect (see e.g. People v Blanco-Ortiz, 196 AD3d 1153, 1155 [4th Dept 2021] [striking two conditions in their entirety and replacing one with its own, original condition]; People v Rozario, 20 Misc 3d 76, 83-84 [2d Dept, 9th & 10th Jud Dists 2008] [modifying "unnecessarily broad" condition with its own, original condition]).
Here, both defendants request that the entirety of the condition be struck, regardless of whether some of the specific terms of condition 28 are supported by the record and squarely within the court's discretion to impose. In other words, defendants eschew precision in crafting an appropriate remedy for a violation of 65.10's limitations. The prosecution does not object to this approach. Therefore, although the approach that better aligns with the statute and caselaw is to excise individual unlawful terms, leaving the remainder of the conditions in place, I agree that in these appeals, the condition rises and falls in its entirety.FN1 In other words, the sentencing courts' references to weapons, [*8]drugs, and/or contraband, must be based on a defendant's particular circumstances, tailored to rehabilitation, which, in turn, justifies the consent to search and the seizure of those items.
II.
In Brazeal, I agree with the plurality that the condition must be struck (see plurality op at 8-9). Requiring defendant Brazeal to consent to search and seizure of illegal drugs and drug paraphernalia serves no statutorily permissible purpose given defendant's offense and history. As the plurality explains, defendant Brazeal "has not been assessed as being in need of alcohol or substance abuse treatment" and the prosecution "concede[s] that substance abuse is not implicated in his case" (id. at 9). Absent such a history of criminal drug use, the prospect of being checked up on does not encourage defendant Brazeal to "keep . . . free of drugs" (plurality op at 7-8, citing Hale, 93 NY2d at 461-462). More to the point, this term is not "individually tailored in relation to his offense,", which has nothing to do with drug use or sale, and thus not designed to further rehabilitation or prevent incarceration (Hale, 93 NY2d at 462; see e.g. People v Andrus, 241 AD3d 447, 448, 450-451 [1st Dept 2025] [DWI offense did not justify consent to search condition for weapons or drugs where defendant had no prior violent history and had a minimal, "experiment(al)" history with illegal substances]). Accordingly, the sentencing court lacked authorization to require defendant to consent to the search of his "person, vehicle and place of abode [], and the seizure of any illegal drugs [and] drug paraphernalia."FN2
III.
A.
I would also strike the consent to search and seizure condition in People v Lora because there is no record support for the court's imposition of the consent to search for and seize firearms and other weapons. Defendant Lora has a substance abuse problem, as is evident from her several intoxication-related convictions, including the underlying charges with a top count felony of aggravated driving while intoxicated. Before her struggle with alcohol defendant turned to drugs as a coping method, although she represents that she has been drug-free since 2014. Her successful completion of a substance abuse program prior to sentencing does not undermine the need for judicial encouragement of her continued sobriety by holding up the possibility of probation searches and seizures (see Hale, 93 NY2d at 461-462). Thus, the record supports the application of the drug, drug paraphernalia and contraband terms of the condition as requiring her to consent to a search of her person, premises and vehicle, and seizure of those items is relevant to and furthers her rehabilitation and her efforts to live a law-abiding life (Penal Law § 65.10 [1]).
The record, however, does not support the court's imposition of the weapons-based consent to search and seizure term. Defendant has no history of criminal weapons possession or use. The prosecution makes no argument in support of this specific term. In fact, it makes no mention of the term at all, describing the condition solely as "a provision consenting to searches of [defendant's] person, car and home and the seizure of drugs and other contraband items." The condition is on a preprinted form that lumps together "any illegal drugs, drug paraphernalia, gun/firearm or other weapon or contraband found," preceded by a single box than can be checked or not. The prosecution points [*9]to defendant's "lengthy history of drunk driving and illegal drug use" and defendant's concession that her alcohol and drug abuse are connected, specifically that she used alcohol as a substitute for quitting other substances. The prosecution is silent, however, as to the bases for the weapons-related reference. As neither the prosecution, the Department of Probation, nor Supreme Court has offered any explanation as to why the weapons-related terms are required, I can see no justification for this intrusion on defendant Lora's liberty and so the entire condition must be struck.
B.
The majority disposes of defendant Lora's appeal on preservation grounds. Thus, the majority avoids the merits of defendant's statutory claim and her alternative constitutional claim that because probationers still retain baseline Fourth Amendment protections against unreasonable searches and seizures, a scheme that authorizes any government intrusion, without regard to the reasonableness of such a search condition as it relates to the probationer's offense, is unconstitutional. The majority misconstrues our preservation jurisprudence as requiring defendant to challenge a probation condition of which defendant had no notice prior to sentencing and which is based on a record adequately developed for appellate review. In doing so, the majority overrules decades of preservation jurisprudence, and erects a new barrier to relief for probationers attempting to rid themselves of conditions they did not even have a chance to object to.FN3
As a threshold matter, preservation is no bar here because defendant did not have an opportunity to challenge the condition before sentencing. It is undisputed that Supreme Court's imposition of the consent to search provision occurred after sentencing, without defendant's knowledge of it. Although Supreme Court notified defendant of several of the conditions of her probation in detail during her plea colloquy and first sentencing proceeding, and reiterated some of the conditions of her sentence at her second and final sentencing proceeding, the first notice defendant—or, as conceded at oral argument, the prosecution—received of the imposition of the consent to search provision was on the probation conditions form provided to defendant after the conference with Supreme Court. At that point, the parties were off the record, and it is unclear whether defendant received and signed the probation condition form while the sentencing proceeding was still in session, and while defendant and the judge were still in each other's presence. According to the sentencing proceeding transcript, defendant received the forms after the conclusion of the sentencing proceeding (see tr at 8, Oct. 25, 2022, in Sup Ct, Queens County, index No. 621-21 [clerk stating "paperwork [was] to follow"]; see also A077 [probation conditions form with pre-stamped and /s/ signature]).FN4 In any event, the prosecution does not assert that the defendant's statutory challenge to the legality of the consent to search provision is unpreserved, nor did the prosecution dispute defendant's argument that under our precedent, defendant was not required to preserve her challenge (see brief for defendant at 27, citing Hakes, 32 NY3d at 644 n 3; Letterlough, 86 NY2d at 263 n 1; Fuller, 57 NY2d at 156). These concessions underscore that the majority's wielding of preservation doctrine to foreclose this appeal is an "inan[e] . . . [barrier] that impede[s] our ability to declare what the law is" (see People v Epakchi, 37 NY3d 39, 63-64 [2021, Wilson, Ch. J., dissenting]).
Fundamentally, if a court has no authority to impose a probation condition as part of the sentence, then the sentence is illegal. It is well-established that a challenge on illegal sentence grounds is exempt from the general rule that parties must preserve their claims at the earliest possible opportunity to ensure appellate review (see People v [*10]Sabb, 2026 NY Slip Op 01590, *2 [2026], citing People v Nieves, 2 NY3d 310, 315 [2004]). Accordingly, the Appellate Division has applied this exemption to a defendant's statutory challenge to a probation condition (see e.g. People v Johnson, 245 AD3d 425, 425 [1st Dept 2026], lv to appeal denied, 45 NY3d 946 [2026] ["Defendant's appeal waiver does not foreclose her challenges to the legality of the conditions of her probation under Penal Law § 65.10(1) and do not require preservation"]; People v Larkin, 243 AD3d 591, 591 [2d Dept 2025], lv to appeal denied, 44 NY3d 1052 [2025] ["The defendant's challenge to a condition of her probation, specifically, Condition No. 14, was not precluded by the waiver of the right to appeal, and that challenge did not require preservation"]; People v Kuhn, 242 AD3d 1610, 1610-11 [4th Dept 2025] ["Defendant next contends that certain conditions of his probation are not authorized by Penal Law § 65.10. Contrary to the People's assertion, we conclude that defendant's contention does not require preservation inasmuch as his challenges to the conditions in question implicate the legality of the sentence"]). The majority ignores this settled law and fails to explain why the Appellate Division has gotten it wrong.FN5
Defendant Lora's constitutional claim also falls within this preservation exemption. Regardless of whether a defendant argues that the court exceeded its statutory authority to impose the condition or that the condition is prohibited on constitutional grounds, the core argument is the same: the court lacks authority to impose a sentence that either the Legislature or the Constitution forbid. That argument is quintessentially an illegal sentence claim.
The majority rejects that basic premise, overrules our precedent, and adopts a new rule that imports a preservation requirement that is meant to address cases where the record is inadequate for appellate review (see majority op at 10-14). According to the majority, preservation is required "in order to allow the parties 'to probe relevant factual and legal issues' and to give the lower court an opportunity to address the claim 'at a time when the issue can be dealt with most effectively'" (id. at 10, quoting People v Cabrera, 41 NY3d 35, 43 [2023], and People v Lopez, 71 NY2d 662, 665 [1988]). In essence, the majority draws a brand-new distinction between as-applied and facial challenges to illegal sentences requiring preservation of the former but not the latter.
Apart from the fact that the majority's analysis is untethered from our settled preservation doctrine, the majority misunderstands the nature of Lora's claims. The adequacy of the record must be gauged against the issues raised on appeal. Lora seeks to confront on statutory and constitutional grounds the imposition of the probation condition before any search or seizure occurs. Defendant is not arguing that under some circumstances the condition furthers her rehabilitation; she claims just the opposite. Her argument is that there is no circumstance under which the consent to search condition complies with the statutory rehabilitation goal and no manner in which it passes constitutional muster because there is no nexus between searching her person and effects and the authorization of a suspicionless search.
The court's authority to lawfully sentence defendant Lora to the search and seizure condition is the precise challenge raised on this appeal. She claims that imposition of the condition violates her statutory and constitutional rights because the court lacked any authority to impose such condition."[T]he illegality of [her] sentence can readily be discerned from the trial record" (Pena, 28 NY3d at 730, citing People v Santiago, 22 NY3d 900, 903 [2013] and People v Nieves, 2 NY3d 310, 315—316 [2004]). The success—or failure—of her claims does not turn on additional fact finding or a more robust record. Her criminal record and the nature of the offense for which she is convicted are purely historical. Specifically, the probation department's report, along with the record of proceedings below, was a [*11]sufficient record on which the sentencing court could decide to impose the consent to search and seizure condition, and it is the same record on which the Appellate Division upheld that determination on the merits, without reference to preservation concerns (236 AD3d 820, 821 [2d Dept 2025]). And, in turn, that is the record we can and should rely on to resolve defendant Lora's challenges—just as the plurality concludes that the record in the lower court is insufficient to support imposition of the condition to defendant Brazeal (see plurality op at 8-9).
The majority's reasoning for applying a preservation bar with broad strokes is untethered from the realities of the lower courts' decision-making processes. As acknowledged by the majority—and the dissent in Brazeal—the courts below purported to exercise their authority to impose the challenged probation condition based on what defendants' records showed at sentencing. The majority fails to identify or explain how additional fact finding or record development would shed light on a defendant's statutory and constitutional arguments that a probation condition is not in furtherance of rehabilitation given the offense or their history and that the condition is an impermissible intrusion on their liberty interests. If that is the standard, we should at least let the lower courts know what additional information is needed to ensure that the probation condition can be lawfully imposed and is properly teed up for appellate review.
TROUTMAN, J. (dissenting in People v Brazeal):
Today, this Court holds for the first time that a sentencing court abused its discretion in imposing a condition of probation because that condition was not reasonably related to the defendant's rehabilitation. The Court chooses to do so in a case involving a brutal act of domestic violence. According to the plurality, a probation condition allowing probation officers to search the defendant's person, vehicle, or home for weapons is not sufficiently related to defendant's current crime of violence or criminal history. Contrary to the plurality's view, the sentencing court is in a far better position to make that discretionary determination. I respectfully dissent.
In April of 2021, during an argument, defendant stabbed his husband with a kitchen knife in the chest. Defendant told police that he and his husband "always" argue and that after his husband pushed him and attempted to leave their shared apartment, defendant stabbed him. The People alleged that the stabbing resulted in internal bleeding, a three-to-four-inch-deep laceration, and required surgery. Defendant was charged with, among other crimes, attempted murder in the second degree.
Defendant received a highly favorable plea deal, in which he agreed to plead guilty to attempted assault in the second degree in exchange for five years of probation. The sentencing court had access to defendant's criminal history, which included: (1) a 2007 youthful offender adjudication of assault in the third degree, reduced from a charge of assault in the second degree that accused defendant of causing physical injury by means of a deadly weapon or dangerous instrument; (2) a 2009 conviction of harassment in the second degree involving physical contact under Penal Law § 240.26 (1), in satisfaction of charges that included assault in the third degree and resisting arrest for which a domestic incident report was filed; and (3) a 2013 Nevada conviction of destruction of property of another, involving an incident where defendant was also charged with domestic battery and coercion through force or threats of force. Defendant was also arrested in Atlanta in 2012 for battery and had an open warrant for failure to appear in that jurisdiction.
In light of that criminal history and the violent nature of the offense, the probation department recommended that the court impose the "Box 28" condition, which allowed the probation department to search defendant's person, home, or vehicle and seize any weapons or contraband found. Over defendant's objection, the sentencing court imposed that condition, noting the violent nature of this offense and defendant's violent criminal history. On appeal, the Appellate Division affirmed, concluding that both defendant's use of a weapon during the underlying offense and his history of violence justified the condition (235 AD3d 890, 892 [2d Dept 2025]).
Now, however, the Court concludes that it has a better view of the appropriate probationary conditions for defendant. The plurality reasons that the sentencing court abused its discretion in imposing the Box 28 condition because it was not reasonably related to defendant's rehabilitation as required by Penal Law § 65.10 (2) (l) and this Court's decision in People v Hale (93 NY2d 454, 461-462 [1999]).
The plurality recognizes that the appropriate standard of review is abuse of discretion as a matter of law (see J. Halligan plurality op at 7). That is because the relevant statute expressly gives sentencing courts discretion to impose conditions that are "reasonably necessary to [e]nsure that the defendant will lead a law-abiding life or to assist him to do so" (Penal Law § 65.10 [1]). That standard of review does not allow this Court to simply substitute its own judgment for that of the sentencing court. When reasonable minds may differ, or, as the plurality acknowledges, when the determination of the lower court is supported by the record, there has been no abuse of discretion as a matter of law (plurality op at 7; see generally People v Denson, 26 NY3d 179, 187 [2015]).
Here, the plurality minimizes defendant's criminal history, characterizing it as "relatively remote," and noting that in the instant offense, defendant used "an ordinary kitchen knife" (plurality op at 8-9). The plurality ignores that defendant has four prior arrests involving assaults,FN1 one of which involved a weapon and another of which involved domestic violence. Moreover, the fact that defendant chased after his husband and stabbed him in the chest when his husband attempted to escape an argument raises serious concerns about defendant's impulse control and potential for committing domestic violence in the future. "Aside from these facts," the plurality asserts, the "record reflects no basis for imposition of the condition" (plurality op at 9). This defendant has a documented criminal history of [*12]violence, use of weapons, and domestic violence. What other facts could possibly be necessary to support the imposition of the search condition? The plurality does not say, and sentencing courts will be left to attempt to parse the Court's reasoning.
The plurality will not go so far as to assert outright that the use of a household item as a weapon will never justify the imposition of the condition, but that is the clear import of its mention that defendant used an "ordinary kitchen knife" to stab his husband (see plurality op at 8-9). The plurality therefore appears to accept defendant's argument that because he used an "ordinary kitchen knife," a search for weapons or contraband would not ensure that he could not repeat the same crime again. But at least one of defendant's prior criminal incidents involved the use of an unspecified weapon, and the instant crime demonstrates that defendant remains willing to use weapons to hurt others. The fact that defendant used a "legal" item unlawfully in the instant offense does not mean that he will not use an illegal weapon in the future. Although the Box 28 condition presumably would not authorize seizure of defendant's kitchen knives, it would allow seizure of other, illegal weapons if defendant were to obtain one. For this reason, I would not require the defendant to use an illegal weapon or firearm in the underlying offense before imposition of the search condition is deemed reasonable. Would the plurality, for example, hold that it was an abuse of discretion to impose the condition upon a probationer who had conducted several knifepoint robberies? Sentencing courts are far better positioned than this Court to make such discretionary determinations.
Furthermore, my colleagues who conclude that the Box 28 condition should be removed do not agree as to why. Judge Halligan's plurality opinion, as explained, grounds its analysis in defendant's "relatively remote" criminal history and use of a kitchen knife instead of an illegal weapon (see plurality op at 8-9). Judge Rivera would have upheld that portion of the search condition allowing probation officers to search for weapons, but not that portion allowing them to search for drugs (J. Rivera concurring op at 5-7). Judge Rivera would strike the condition in its entirety only because the parties agree that the condition "rises and falls in its entirety" (see concurring op at 5)FN2. These disparate views will add to the confusion of sentencing courts attempting to comply with the Court's ruling.
This Court has never before held that a sentencing court abused its discretion as a matter of law in imposing a probation condition because that condition was not reasonably related to the defendant's rehabilitation FN3. In People v Letterlough (86 NY2d 259 [1995]), we held that a sentencing court was without authority to require, as a condition of probation, that the defendant affix a "CONVICTED DWI" sign to any vehicle he drove, inasmuch as a such a condition was punitive and not rehabilitative (see id. at 263-267). The Court's holding, however, was that the [*13]sentencing court was without statutory authority to impose such a condition upon anyone because of its punitive nature, not that the imposition of the condition was an abuse of discretion in the defendant's particular case (see id.). Hale appears to be the only case in which we considered whether a probation condition was reasonably related to a defendant's rehabilitation (93 NY2d at 461-462), and we did not in that case nor any other, until today, conclude that a sentencing court abused its discretion in imposing a probation condition that the court was legally authorized to impose.
Sentencing courts may be less likely to consider probation as a potential sentence if they know their discretion will be second-guessed and curtailed in such a manner. A defendant has no "right" to a sentence of probation (see id. at 463). Here, defendant "sought the probation sentence, along with its obligations and its obvious benefits, as a far more desirable disposition than the potential alternative" (id.). Aside from inserting this Court into discretionary determinations by the sentencing court—a place where this Court has no business being—the Court's holding today may perversely result in fewer probationary sentences if sentencing courts cannot be assured that they may impose conditions designed to ensure that the defendant will lead a law-abiding life without this Court second-guessing their exercise of discretion.FN4

Footnotes

Footnote 1
Brazeal's prosecution in Las Vegas included charges of felony coercion and misdemeanor domestic battery, but the disposition of those two was listed as "denied" and he was found guilty of the remaining charge at trial. His arrests in Georgia were for marijuana possession and misdemeanor battery but the record does not indicate any further action on those charges, listing the dispositions as "other" and "not prosecuted."

Footnote 2
Both defendants request that the condition be struck in its entirety, so we express no view as to whether any specific term in the condition was sufficiently tailored to their particular circumstances.

Footnote 3
Penal Law § 65.10 (5) was enacted after the defendant's probationary sentence in Hale was imposed and our analysis was therefore limited to subdivision (2) (l)'s requirement that any other condition be related to rehabilitation (see Hale, 93 NY2d at 462). Under the current statutory scheme, a condition may be "reasonably related to the defendant's rehabilitation" or "necessary or appropriate to ameliorate the conduct which gave rise to the offense or to prevent the incarceration of the defendant" (Penal Law § 65.10 [2] [l]; [5]; see L 1996, ch 653).

Footnote 4
Although the People did not object to Lora's challenges as unpreserved, "[i]t is this Court's duty to determine whether an issue has been properly preserved below, regardless of whether the parties have raised preservation arguments" (Sabine v State, 43 NY3d 1015, 1017 [2024], citing Matter of McGovern v Mount Pleasant Cent. Sch. Dist., 25 NY3d 1051, 1053 [2015]).

Footnote 5
The dissent's attack on only one component of the condition—the authorization to search for a firearm or other weapons (see Rivera, J., dissenting op at 6)—is puzzling, given the dissent's acknowledgment that "the condition rises and falls in its entirety" (see id. at 5). Generally, we do not resolve cases on grounds not pressed by the parties.

Footnote 6
Contrary to the dissent's contention that Lora had no opportunity to challenge the condition (see Rivera, J., dissenting op at 9), the record reflects that Lora signed the form listing the conditions of her probation during the sentencing hearing and she could have raised an objection at that time, as Brazeal did.

Footnote 7
Our dissenting colleagues cite Appellate Division cases holding that statutory challenges under Penal Law § 65.10 fall within the scope of the illegal sentence exception (see Rivera, J., dissenting op at 11). Those decisions rely on a broad reading of Letterlough. As we have explained, preservation was not required in that case because the condition at issue was entirely "outside the authority of the [sentencing] court" under Penal Law § 65.10 (Letterlough, 86 NY2d at 261), not because the challenge was framed in statutory terms.

Footnote 1
Both the Brazeal plurality and the dissent in Brazeal take issue with my view that redlining out the offensive terms of the condition, and allowing the appropriate terms to stand, would be the better approach (see plurality op at n 5; see also dissenting op at n 4). Yet their critiques beg the question of what the purpose would be of providing a list of terms within condition 28. Blanket search and seizure authority leaves probation officers with incredible power to enter a probationer's home, where both the federal and the State Constitutions are at their highest ebb of protection against governmental intrusion. The distinction is not academic. As but one example, a court that redlines out the weapons search terms but keeps the drug term would permit a probation officer to search a probationer's small coin purse or wallet for drugs, but not for a firearm, since a firearm would not be concealable in such a small space.

Footnote 2
The dissent in Brazeal misunderstands my reading of condition 28 in holding that I would require probation officers to ignore any contraband discovered during a search for firearms (see dissenting op at 5-6). I agree with the dissent to the extent that probation officers may seize contraband within constitutional limits; any such seizure would be permissible under the plain view doctrine. But, in my view, cabining the probation officers' power to search in accordance with the specific terms of the condition would limit interference with defendants' constitutional rights only to the extent permissible by law and necessary to serve the rehabilitative objectives of probation (see supra n 1).

Footnote 3
The Legislature is free to create a path to direct appellate review in our Court for these types of statutory and constitutional claims (see People v Romero, 7 NY3d 633, 637 [2006] [it is "wholly within the discretion of the State to allow or not to allow" particular claims of error on appeal]).

Footnote 4
Beyond the question of whether the sentencing court properly complied with CPL 410.10 [1], which required the court to provide the probation conditions at the time the sentence is imposed, the fundamental issue here is that defendant is challenging her sentence as illegal (see majority op at n 7; see also People v Francabandera, 33 NY2d 429, 434 n 2 [1974] ["Issues stemming from a guilty plea which involve the legality of the sentence or the voluntariness of the plea itself are always appealable" (emphasis added)], citing People v Lynn, 29 NY2d 196, 203 [1971]).

Footnote 5
The majority attempts to distinguish these cases by claiming that they rely on a "broad reading of Letterlough" (see majority op at n 7), and that the distinction between Letterlough and this case is that in the former, the "condition at issue was entirely 'outside the authority of the [sentencing] court' under Penal Law § 65.10[,]" and here, defendant's challenge is only on "statutory terms" (id., quoting Letterlough, 86 NY2d at 261). The majority misreads Letterlough, which clearly provided that the issue on appeal was whether "County Court acted within the parameters of the probationary sentencing structure authorized by Penal Law § 65.10[,]" which entailed an assessment of whether the conditions imposed were "intended to punish defendant[,]" or appropriately served the objectives of rehabilitation (id. at 265-266). The mere fact that the condition at issue in Letterlough was so offensive as to be fundamentally incompatible with the Legislature's intent for the probation scheme does not support the majority's misapplication of our preservation rule here.

Footnote 1
The plurality's conclusion that defendant's out-of-state charges did not include assault (see plurality op at 9) appears to be based on the fact that the out-of-state charges were for "battery," which, of course, is another term for assault.

Footnote 2
For the reasons explained, I agree with Judge Rivera that the sentencing court did not abuse its discretion in concluding that the portion of the condition allowing probation officers to search for and seize weapons is reasonably related to defendant's rehabilitation. I respectfully disagree, however, with Judge Rivera's interpretation of the condition. The Box 28 condition allows probation officers to conduct a general search of defendant's person, vehicle, or home, and then seize any contraband found during that search. Under Judge Rivera's parsing of the condition, probation officers would be permitted to search for weapons, and seize any other contraband, including illegal drugs, found in plain view during their search for weapons, but officers would be unable to search areas that could not conceal a weapon (see J. Rivera concurring op at 5-7 & nn 1, 2). Given that defendant never raised this issue, either before the sentencing court or this Court, and the purpose of probation is to ensure "that the defendant will lead a law-abiding life" (Penal Law § 65.10 [1]), I respectfully disagree with Judge Rivera that the search condition should be limited in such a way.

Footnote 3
Moreover, the legislature has confirmed that rehabilitation is not the only purpose of probation. In 1996, the legislature amended Penal Law § 65.10 to add subdivision (5), which states that "[w]hen imposing a sentence of probation the court may, in addition to any conditions imposed pursuant to subdivisions two, three and four of this section, require that the defendant comply with any other reasonable condition as the court shall determine to be necessary or appropriate to ameliorate the conduct which gave rise to the offense or to prevent the incarceration of the defendant" (see L 1996, ch 653, § 1).

Footnote 4
Defendant's remaining contentions do not require reversal. I would therefore affirm.